JON S. CUMMINGS, JR., Plaintiff-Appellee, *v.* CHICAGO TRANSIT AUTHORITY, Defendant-Appellant.

First District (3rd Division)   Nos. 79-1318, 79-1558 cons.

Opinion filed July 16, 1980.

Edward J. Egan and Roderick J. Bergin, both of Chicago Transit Authority, of Chicago (Dore & O'Toole, Ltd., of counsel), for appellant.

Cooney & Stenn, of Chicago (John J. Henely, of counsel), for appellee.

Mr. JUSTICE McNAMARA delivered the opinion of the court:

Plaintiff, Jon C. Cummings, Jr., brought this action against defendant, Chicago Transit Authority, seeking damages for injuries sustained in a collision between a CTA bus and another vehicle. A jury returned a verdict for plaintiff in the amount of $147,000. The trial court entered judgment on the verdict and denied defendant's motion for a new trial. Defendant appeals. The following pertinent evidence was adduced at trial.

On January 18, 1973, at approximately 1:30 p.m., plaintiff was a passenger on a CTA bus operated by Johnnie Readus. As the bus proceeded south, it collided with the rear of another southbound vehicle operated by Mary Jakstavich.

Readus testified that the bus pulled up behind two automobiles stopped at a red light. When the light changed, the bus proceeded at a speed of four to five miles per hour. The lead vehicle turned into a service station at the southwest corner of the intersection. According to Readus, the Jakstavich vehicle, which was directly ahead of the bus, also attempted to make a right turn into the gas station without displaying a turn signal. Jakstavich stopped, moved forward, and stopped again. After Readus swerved to the left in an unsuccessful attempt to avoid the vehicle, the right front bumper of the bus struck the left rear portion of Jakstavich's automobile. Readus testified that the impact was very light, and that the only damage to the bus was a slightly bent bumper. In response to Readus' question, all of the passengers stated that they were not injured.

Herbert Thompson, a passenger, testified that the bus was proceeding slowly, and that the impact was slight. No one complained of injury and Thompson did not observe anyone fall to the floor. A Chicago police officer and a CTA supervisor testified that the damage to both vehicles was slight. The officer characterized the accident as a "fender-bender."

Jakstavich, testifying for plaintiff, related that after entering the intersection, the driver of the vehicle ahead of her gave a right turn signal and turned slowly into the service station. Jakstavich, who was traveling at five to 10 miles per hour and who was not planning to enter the service station, applied her brakes. She estimated that the bus was moving through the intersection at approximately 20 miles per hour, but she did not know its speed at the time of impact. She further testified that the impact was hard, and that the rear portion of her automobile was "totaled."

Plaintiff testified that he was seated on the side bench directly behind the bus driver. While so seated, he suddenly felt two sharp jolts. His head hit a pole and he fell to the floor on the side of his back. He felt a sharp pain. After exiting the bus, instead of continuing on to work, he returned home. Plaintiff contacted a neighbor, who described him as dazed. In response to a telephone call from a neighbor, the police brought plaintiff to Chicago Osteopathic Medical Center. A doctor at the hospital told plaintiff to see his own physician and to stay off his feet for a few days. That evening, plaintiff began to experience a dull pain in his lower back. Plaintiff had asthma throughout most of his life but had no back problems prior to the accident.

One week later, plaintiff visited Dr. Donald Aaronson, an allergist who had treated plaintiff for bronchial asthma since 1965. After being informed of the accident and of plaintiff's pain in the back and head, Dr. Aaronson referred him to the orthopedic clinic at Northwestern Memorial Hospital. Although he never personally examined plaintiff's back, Dr. Aaronson testified that the back injury was the cause of plaintiff's disability.

Approximately one month after the collision, plaintiff was examined by Dr. William J. Kane, an orthopedic surgeon. Based on a myelogram, Dr. Kane found that plaintiff had a herniated or protruding disc at the fourth and fifth lumbar vertebra levels. Plaintiff's condition was permanent; the accident could have caused the disability; and plaintiff was unable to perform his work duties. In 1975, plaintiff was hospitalized to undergo a laminectomy. Surgery was postponed because in view of plaintiff's asthma problems, risk of death outweighed the benefits of the operation. Plaintiff could not expect relief without surgery. In 1978, surgery was discussed again because plaintiff's back condition had deteriorated. Future surgery would depend upon a balancing of risks and

anticipated benefits. The present cost of a laminectomy would be between $7,000 and $10,000. Dr. John Romine, an orthopedic surgeon, treated plaintiff in 1973 and found a degenerative joint disease which probably existed prior to the trauma. The accident could have aggravated the symptoms.

Since 1966, plaintiff had been employed in the Youth Division of the Illinois Department of Corrections. Plaintiff returned to work two weeks after the accident. He testified that he continued working until October 1975, at which time he found he could no longer work due to his back pain. As a result of the accident, he expended approximately $1,800 for housekeeping services, and incurred $2,800 in medical expenses. His annual salary in 1975 was $13,600.

Ray Raymond, plaintiff's former supervisor, described plaintiff as a very dedicated, conscientious worker. He noticed that plaintiff had breathing difficulties but did not observe any back problems. Another supervisor, E. Torrence Fletcher, testified that prior to the accident, plaintiff was an energetic worker and did not complain about his back. After the accident, plaintiff's work attendance was erratic because of the back pain.

In December 1975, plaintiff received a nonoccupational disability retirement. The disability was granted on the basis of bronchial asthma and severe chronic lung disease. Dr. Aaronson was one of the certifying physicians.

The parties stipulated that according to mortality tables, the life expectancy of a 56-year-old nonwhite male was 66.6 years.

In addition to a general verdict for plaintiff, the jury answered in the negative a special interrogatory asking whether the negligence of a third person was the sole proximate cause of plaintiff's injuries.

Defendant contends that during the *voir dire* examination of prospective jurors, plaintiff's counsel asked two questions which operated to defendant's prejudice.

■■ Pursuant to Supreme Court Rule 234 (Ill. Rev. Stat. 1979, ch. 110A, par. 234), the trial court conducted the bulk of the *voir dire* questioning of the prospective jurors and permitted the parties to supplement the examination by some direct inquiry. Under questioning by the judge, three jurors stated that they had prior personal injury claims, but that the matters had been settled and they were satisfied with the settlement. In view of the jurors' personal experiences, the trial court, after discussion outside the presence of the jury, permitted plaintiff's counsel to ask the last juror who had mentioned settlement whether she would be influenced by the fact that a case had not been settled. Prior to the question, plaintiff's counsel had remarked that plaintiff was unable to settle his case.

In view of the circumstances, we find nothing improper about the question. Either party was entitled to expose any latent bias or prejudice of the prospective juror about personal injury litigation or settlement. The question did not connote or indoctrinate the panel to believe defendant was guilty of any wrongdoing, nor did the question attempt to place the prospective juror in plaintiff's place. The trial court did not abuse its discretion in permitting plaintiff's counsel to ask the question. See *Christian v. New York Central R.R. Co.* (1960), 28 Ill. App. 2d 57, 170 N.E.2d 183.

Defendant also complains that plaintiff's counsel asked a prospective juror whether if he found defendant liable, he would apply the law on damages as given by the court. Defense counsel offered no objection to the remark.

■■ Since no objection to the remark or request for a mistrial was made, any error was waived. (*Allen v. Dorris* (1974), 16 Ill. App. 3d 980, 307 N.E.2d 225.) More importantly, although Supreme Court Rule 234 directs that *voir dire* questions shall not concern matters of law or instruction, the question was innocuous and could not have been prejudicial to defendant. It does not warrant reversal.

Defendant next urges that the trial court erred in granting plaintiff's motion *in limine* which prohibited cross-examination of Jakstavich concerning her former status as a co-defendant. Plaintiff had initially named her as a defendant. Prior to trial, pursuant to stipulation between plaintiff and Jakstavich, she was dismissed from the suit. At trial she testified for plaintiff. When defendant sought to inquire about her former status, plaintiff moved to preclude such questioning. Outside the presence of the jury, Jakstavich testified that she had not paid any compensation to the plaintiff and did not receive any assurance that she would be dismissed in return for her cooperation as a witness. The court concluded there was "no lesser consideration for dropping her suit," and granted plaintiff's motion. Defendant maintains that due to this ruling, the jury was unaware of the possibility of bias on the part of the witness.

■■ A witness may be impeached by showing interest, bias or motive to falsify. (*People v. Thompson* (1979), 75 Ill. App. 3d 901, 394 N.E.2d 422; *Gilberto v. Nordtvedt* (1971), 1 Ill. App. 3d 677, 274 N.E.2d 139.) The latitude permitted on cross-examination to establish bias, however, is within the trial court's discretion and a reviewing court will interfere only where there has been a clear abuse of discretion. (*People v. Nowak* (1979), 76 Ill. App. 3d 472, 395 N.E.2d 28.) Questions concerning the former litigant status of a witness come within the sound discretion of the trial court. *Schmitt v. Chicago Transit Authority* (1962), 34 Ill. App. 2d 67, 179 N.E.2d 838.

In *Shanowat v. Checker Taxi Co.* (1964), 48 Ill. App. 2d 81, 198

N.E.2d 573, this court held that the trial court did not commit prejudicial error in refusing to allow the jury to be informed that a witness for plaintiff had formerly been a co-defendant and had entered into an agreement with plaintiff by which she was discharged from the suit. The court noted that the agreement, executed before the jury was impaneled, released any interest the witness previously had in the litigation.

■■ Similarly, we find no prejudicial error in excluding the evidence regarding Jakstavich's former status as a litigant. Although there was no settlement agreement between plaintiff and the witness, Jakstavich was nonetheless dismissed by stipulation. The dismissal terminated any interest she may have had in the present suit. Moreover, she indicated that she received and gave nothing for that dismissal. Accordingly, the trial court did not abuse its discretion in refusing to permit defendant to cross-examine her about her former status as a co-defendant.

Defendant further contends that it was prejudiced by the erroneous admission of a letter of commendation praising plaintiff's work. It argues that the letter aroused the sympathy of the jury. The letter, dated June 22, 1967, was written by a director of a youth committee to the director of the Illinois Youth Commission. During the examination of Ray Raymond, plaintiff's supervisor who had received a copy of the letter, the writing was received in evidence as a business record.

■■ We reject plaintiff's argument that the letter was admissible under the business record exception to the hearsay rule. The letter was hearsay and, written six years before the accident, it was irrelevant to the pertinent issue of plaintiff's physical disability. Yet, error in admitting evidence does not require reversal if there has been no prejudice or if the evidence has not materially affected the outcome of the trial. (*Plasti-Drum Corp. v. Ferrell* (1979), 70 Ill. App. 3d 441, 388 N.E.2d 438.) The facts contained in the letter were established independently through similar testimony of witnesses. Both of plaintiff's supervisors testified without objection that plaintiff was an energetic, dedicated, conscientious employee. In view of the fact that the jury received the same or similar information from other sources, the admission of the letter could not be construed as prejudicial to defendant or constitute reversible error. See *Jacobs v. Holley* (1972), 3 Ill. App. 3d 762, 279 N.E.2d 186.

■■ Defendant next argues that the $147,000 award of damages is excessive. The amount of damages to be awarded is largely within the discretion of the jury. (*Lau v. West Towns Bus Co.* (1959), 16 Ill. 2d 442, 158 N.E.2d 63, *cert. denied* (1959), 361 U.S. 127, 4 L. Ed. 2d 180, 80 S. Ct. 256.) Courts are reluctant to interfere with this discretion as long as the damage assessment is within the range of the evidence, the instructions are proper, and there is no improper exclusion of evidence. (*Palmer v. Avco Distributing Corp.* (1979), 75 Ill. App. 3d 598, 394 N.E.2d 480.) A

reviewing court will not set aside a finding as to damages unless it appears to have been the result of passion and prejudice on the part of the jury. *Shanowat v. Checker Taxi Co.*

■■ Defendant argues that plaintiff's future medical expenses, specifically for the laminectomy, were not recoverable because they were not reasonably certain to occur. In general, possible future damages are not compensable unless they are reasonably certain to occur. (*Harp v. Illinois Central Gulf R.R. Co.* (1977), 55 Ill. App. 3d 822, 370 N.E.2d 826.) Dr. Kane stated that plaintiff could not expect any relief from his back pain without surgery. He explained that the necessary laminectomy was postponed in 1975 due to the risk posed in light of plaintiff's asthma and pulmonary problems. Dr. Kane indicated, however, that the possibility of surgery, despite the risks, was discussed again in 1978 because of the worsening of plaintiff's condition. When asked the status of the decision concerning future surgery, Dr. Kane responded that such decision would require a balancing of risks to the patient and potential anticipated benefits. We believe the jury could have concluded from this testimony that laminectomy surgery was reasonably certain to occur in the future. Accordingly, future medical damages for such operation were properly compensable.

■■ Under its contention that damages were excessive, defendant also argues that there was insufficient evidence to support plaintiff's claim for lost time and future earnings. Yet, there was medical testimony that he was permanently disabled from working by reason of the injury, and that he had a life expectancy of an additional 10 years. In light of the evidence presented, the jury could properly conclude that plaintiff would be unfit to work as a juvenile officer for the rest of his life. Therefore it was not error for plaintiff's counsel to argue, and for the trial court to instruct the jury, to consider plaintiff's future wage losses in computing damages. After reviewing the evidence concerning plaintiff's physical condition, medical expenses, and loss of wages, we cannot say that the amount of damages awarded is of such magnitude as to demonstrate passion and prejudice on the part of the jury.

Defendant's final contention is that the verdict and judgment are against the manifest weight of the evidence. In support of its argument, defendant points to various contradictions and inconsistencies in testimony of the witness.

■ ■ It is the function of the jury to weigh contradictory evidence, judge the credibility of the witnesses, and draw the ultimate conclusions as to facts. (*Johnson v. Chicago Transit Authority* (1975), 28 Ill. App. 3d 945, 329 N.E.2d 395.) It was thus the jury's prerogative to believe the testimony of plaintiff and Jakstavich regarding the accident rather than the testimony of the bus operator and passenger. The jury's determination

922

will not be disturbed merely because a jury could have found differently or judges might find other conclusions to be more reasonable. (*Kupcikevicius v. Fitzgibbons* (1976), 41 Ill. App. 3d 405, 354 N.E.2d 434.) We conclude that there was ample evidence to support the jury's verdict in favor of plaintiff. There was evidence that the bus was traveling 20 miles per hour when it struck a halted vehicle. There was evidence that the impact was hard and that plaintiff was thrown to the floor. Medical testimony indicated that the accident caused plaintiff's chronic back injury, and that he was permanently disabled. The evidence was sufficient to justify the jury's verdict, and the trial court properly entered judgment for plaintiff on the verdict.

For the reasons stated, the judgment of the circuit court of Cook County for plaintiff against defendant in the amount of $147,000 is affirmed.

Judgment affirmed.

McGILLICUDDY, P. J., and SIMON, J., concur.