GARY BRAUN, Plaintiff-Appellant, v. THE BOARD OF EDUCATION OF RED BUD COMMUNITY UNIT SCHOOL DISTRICT No. 132 *et al.*, Defendants-Appellees.

Fifth District   No. 5—84—0471

Opinion filed December 16, 1986.—Rehearing denied January 16, 1987.

KASSERMAN, J., dissenting.

Rau & Cooper, of Red Bud, and Rau & Rau, of Waterloo, for appellant.

Dennis E. Rose, of Donovan, Hatch & Constance, of Belleville, for appellees.

JUSTICE WELCH delivered the opinion of the court:

In this personal injury action, plaintiff, Gary Braun, sought damages from defendants board of education of Red Bud Community Unit School District No. 132 and Richard Griffin, a physical education teacher employed by defendant board. After a trial, a Randolph

County jury found for plaintiff and against the board on count one of his complaint, which alleged common negligence, and found plaintiff's damages to be $470,000. The jury also found plaintiff to be 15% comparatively negligent, reducing the verdict to $395,000. The jury found for the board and Griffin on counts two and three, respectively. Each of these counts alleged wilful and wanton misconduct. The trial court entered judgment in the board's favor notwithstanding the verdict as to count one. Plaintiff appeals as to all three counts.

In his amended complaint, plaintiff alleged as follows: Plaintiff was born April 6, 1961. On December 6, 1976, Griffin directed plaintiff to post on the scoreboard the names of players who were going to play in a basketball game. Plaintiff was a student and a manager of the basketball team. Griffin directed that plaintiff use an aluminum extension ladder. While on the ladder, plaintiff "blacked out causing him to fall from the ladder to the gymnasium floor," and he was seriously injured. Plaintiff was afflicted with epilepsy before and after the fall, and this was indicated in plaintiff's "School Health Examination Record." Plaintiff alleged in count one that the board through its agents and servants was negligent.

Count two was also directed against the board, but alleged that the board's acts or omissions amounted to wilful or wanton misconduct. In count three, plaintiff alleged Griffin was guilty of wilful and wanton conduct.

Evidence pertinent to the issues on appeal was as follows: On or about November 29, 1976, plaintiff, a high school freshman, had a seizure while seated in the coaches' locker room at the high school. Dave Krause, then a coach for the freshman team, was present and witnessed the seizure, as did one player. Krause telephoned plaintiff's father, who came to the school and took plaintiff home. Plaintiff did not attend the game his team played at another school later that evening. Krause testified he did not know what day he told Griffin of the November 29, 1976, seizure. Krause testified he did not know previously that plaintiff's situation was not "controlled" and that afterward plaintiff's father asked plaintiff whether he took his medication.

Plaintiff testified: Forgetting his medication did not always result in a seizure the same day. His father warned him not to use ladders or climb high. He had used the high school's "scaffold" at least once. On the instant occasion he asked Griffin if he could use the scaffold, but Griffin told him to get the ladder from the janitor's area. Griffin tested the ladder for steadiness. Plaintiff never told Griffin plaintiff was not to use ladders or that his medication was not controlling the seizures.

Griffin testified: He knew plaintiff had seizures when plaintiff entered high school. He did not know when he learned of the November 29 seizure. Plaintiff spent "any free moment" he had at the gym, both between classes and after school, and occasionally came to Griffin's house. Griffin talked to plaintiff from time to time concerning his seizures and medication and had also talked on the subject with plaintiff's parents: "My understanding was that he had seizures. He was taking medication for those and the situation was under control." Griffin knew plaintiff was absent from school on the morning of the injury. He asked plaintiff why. Plaintiff said he had seen the doctor; Griffin asked plaintiff if he was having problems; plaintiff said no, just a skin rash. Griffin never saw plaintiff have a seizure at school. Neither plaintiff nor his parents ever told Griffin the medication was not controlling the seizures. Had he known this was not true, he would not have let plaintiff climb the ladder or the scaffold.

There was disagreement among the witnesses as to where the scaffold was located at the time of the accident, but all agreed it was on the premises. The portion of the scaffold intended for standing was described by the school superintendent (Holmes) as a platform 13¾ inches by 8½ inches, having an "upper rail" 42 inches above the platform. Plaintiff was about 5 feet 8 inches tall at the time of the injury.

Among the exhibits in evidence was a "School Health Examination Record" filled out by plaintiff's doctor (D. Tang), his dentist, and his parents upon plaintiff's entrance into the ninth grade. In the portion apparently completed by the parents, this record states "yes" and "9 yrs." (age) for "epilepsy" and states in an area left blank for notation of emotional or social problems: "Has siezers [sic] and is hyperactive." The printed form also states: "The above-named person is physically able to participate in physical education and competitive sports *unless otherwise* specified." (Emphasis in original.) The space following this statement was not filled in.

Plaintiff's seizures commenced after he was struck by a baseball bat in 1970. There was evidence that plaintiff had a number of seizures while in grade school from 1971 to 1973. In 1973 and early 1974, plaintiff was taught at home. He returned to school in 1974 and repeated the seventh grade. The school nurse testified there was no school record of a seizure since plaintiff's return to school in 1974. Plaintiff's parents testified plaintiff was hospitalized on November 17, 1975, for seizures, and his medication was adjusted. Plaintiff's father testified plaintiff had a seizure at school in May 1976. Plaintiff's mother testified plaintiff's next seizure was on November 29, 1976.

Plaintiff began high school in the fall of 1976. There was evidence that his academic progress continued to be poor, and, according to his mother, he was emotionally immature compared to his brothers when he began high school. Holmes testified that based on a test given to eighth graders in 1976, plaintiff's academic skills were then at roughly a fourth-grade level.

■ Plaintiff argues the trial court erred in entering judgment *n.o.v.* for the board as to count one of the complaint. Judgments *n.o.v.* ought to be entered only in those cases in which all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand. (*Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 510, 229 N.E.2d 504, 513-14.) The propriety of the trial court's ruling on count one depends on whether the trial court properly interpreted the extent of immunity from negligence suits provided by sections 24—24 and 34—84a of the School Code (Ill. Rev. Stat. 1985, ch. 122, pars. 24—24, 34—84a). The nature and extent of this immunity has been the subject of much comment by the Illinois courts of review, and consideration of some of those cases is helpful here. In *Kobylanski v. Chicago Board of Education* (1976), 63 Ill. 2d 165, 347 N.E.2d 705, our supreme court held that these sections of the School Code were intended by our legislature to confer upon teachers and other "certificated educational employees" immunity from suits for negligence arising out of "matters relating to the discipline in and conduct of the schools and the school children" and concluded that in order to impose liability against such educators, a plaintiff must prove wilful and wanton misconduct. (63 Ill. 2d 165, 170, 173, 347 N.E.2d 705, 709, 711.) In *Gerrity v. Beatty* (1978), 71 Ill. 2d 47, 373 N.E.2d 1323, our supreme court considered an allegation of negligence against a school district. The court concluded the count in question "did not allege negligence arising out of the teacher-student relationship in matters relating to the teacher's personal supervision and control of the conduct or physical movement of a student, but instead alleged negligence in connection with what we consider to be the separate function of furnishing equipment." (71 Ill. 2d 47, 52, 373 N.E.2d 1323, 1326.) The court concluded a negligence action might be maintained against the school district for breach of its duty to provide suitable equipment. In *Thomas v. Chicago Board of Education* (1979), 77 Ill. 2d 165, 395 N.E.2d 538, our supreme court concluded that "inspecting and supplying the students with equipment" was included in the defendant football coaches' duty to supervise rather than the school district's duty to furnish equipment and

thus fell under the more stringent (wilful and wanton) standard. 77 Ill. 2d 165, 172, 395 N.E.2d 538, 541.

The Illinois appellate court, in *Griffis v. Board of Education* (1979), 72 Ill. App. 3d 784, 391 N.E.2d 451, reasoned that the negligence immunity conferred by the School Code should not be available to the board where there was no reason to provide such immunity to the board as a guarantee that the teacher-student relationship would not be jeopardized. The court concluded the teacher-student relationship did not give rise to the conduct which was the proximate cause of the plaintiff's injuries in that case, hence the negligence standard should be applied.

■ In light of the above authorities, we believe the trial court's ruling as to count one in the case at bar was correct. In count one, plaintiff alleged the board, by and through its agents and servants, proximately caused plaintiff's injuries in that it "(a) negligently provided equipment, namely, an aluminum extension ladder, to Plaintiff and directed Plaintiff to climb said ladder *** when the Defendant knew, or should have known, that it was unreasonably dangerous equipment in that it was unreasonably dangerous to direct a child with *** epilepsy, a child who had had a seizure on the school premises within seven (7) days prior thereto, to climb said ladder to a height of ten to twenty feet without adequate support and protection; (b) negligently failed to provide Plaintiff, a child with *** epilepsy, *** who had had a seizure on the school premises within seven (7) days prior thereto, with safe and proper equipment such as a scaffold to put Plaintiff in a position where the names on the scoreboard could be changed in a reasonably safe manner." Plaintiff has valiantly attempted to allege a failure to furnish proper equipment within the rule of *Gerrity v. Beatty*. However, the sole agent of the board in any way connected with these allegations is Griffin, the direct supervisor of the activity in question. The board's failure to "furnish" the scaffold cannot be a proximate cause of the injuries, for the scaffold was "furnished" and available, though it was not implemented for the task.

In our view the instant facts are not within the rule in *Gerrity*. In the instant case, unlike *Gerrity*, the equipment was "furnished." The scaffold was on the premises and, assuming the failure to use it was a proximate cause of plaintiff's injuries, that failure was entirely Griffin's and arose out of the student-teacher relationship. *Griffis* is inapposite, as in *Griffis* the count in question was based on acts of personnel other than the teacher who assigned the plaintiff the tasks he was doing when injured. Plaintiff also cites *Montag v. Board of Edu-*

*cation* (1983), 112 Ill. App. 3d 1039, 446 N.E.2d 299, arguing that the board's duty in the case at bar was not only to purchase the scaffold but to "supply" it for the task. Plaintiff's explanation of the relevance of that case is telling, however: "If the Board only purchases the equipment, but, *through its teachers,* fails to supply the equipment to the students, then the Board is liable." (Emphasis added.) Plaintiff's argument directly implicates the student-teacher relationship and hence the negligence immunity conferred by our legislature. In *Hadley v. Witt Unit School District 66* (1984), 123 Ill. App. 3d 19, 462 N.E.2d 877, cited by plaintiff, the allegations approved on appeal were of wilful and wanton misconduct. And in *Nielsen v. Community Unit School District No. 3* (1980), 90 Ill. App. 3d 243, 412 N.E.2d 1177, cited by plaintiff, the appellate court concluded the negligence count was "based primarily" on a theory of defective equipment as opposed to improper supervision. The opposite is true of count one here in light of the allegations of negligence in count one which we quote above.

We conclude that the trial court's interpretation of the pertinent authorities was correct and required judgment for the board as to count one. We next consider plaintiff's contention that the trial court should have entered judgment for plaintiff on counts two and three under the *n.o.v. (Pedrick)* standard.

■■ ■ A wilful or wanton injury must have been intentional or the act must have been committed under circumstances exhibiting a reckless disregard for the safety of others, such as a failure, after knowledge of impending danger, to exercise ordinary care to prevent it or a failure to discover the danger through recklessness or carelessness when it could have been discovered by ordinary care. The question whether acts amount to wilful and wanton misconduct is normally a question of fact to be determined by the jury. (*Hadley v. Witt Unit School District 66* (1984), 123 Ill. App. 3d 19, 22, 462 N.E.2d 877, 880.) It is the function of the jury to weigh evidence, judge credibility of witnesses, and draw ultimate conclusions of fact. (*Cummings v. Chicago Transit Authority* (1980), 86 Ill. App. 3d 914, 921, 408 N.E.2d 737, 742.) There was evidence in this case which, if believed, supported a finding that Griffin was not guilty of wilful and wanton misconduct, and the jury apparently believed that evidence. Griffin's testimony indicated his belief that plaintiff's condition was controlled, and we cannot say as a matter of law the belief was unreasonable. Plaintiff's recent seizure record as known to Griffin or other school personnel was not such that placing him on a ladder was wilful and wanton as a matter of law; the jury was entitled to find to the con-

trary.

■ Plaintiff contends the board was guilty of wilful and wanton misconduct for failing through its employees to disseminate appropriate information about plaintiff's condition to prevent his being injured as he was. However, the verdicts imply the jury believed the contrary, and no such failure to disseminate can be held the proximate cause of plaintiff's injuries as a matter of law. Griffin's testimony indicated much awareness of plaintiff's situation, though regrettably not enough to prevent the injury. It appears Griffin was more familiar with plaintiff's situation and dealt with plaintiff more often and extensively than any other employee of the board who testified. Plaintiff's ninth-grade health record does not disclose as much as Griffin admitted he knew. We need not decide whether Griffin's or the school nurse's failure to inquire directly of plaintiff's parents as to whether there were any activity restrictions placed on plaintiff would have supported a finding of wilful and wanton misconduct; the jury apparently concluded the contrary, and the jury's finding in that regard was not erroneous as a matter of law. We conclude the trial judge did not err in entering judgment on the jury verdicts as to counts two and three.

For the foregoing reasons, the judgment of the circuit court of Randolph County is affirmed.

Affirmed.

KARNS, P.J., concurs.

JUSTICE KASSERMAN, dissenting:
I respectfully dissent.

As the majority recognizes, a school district may be held liable in ordinary negligence for providing equipment which is known, or should have been known, to be defective or dangerous. (*Gerrity v. Beatty* (1978), 71 Ill. 2d 47, 52, 373 N.E.2d 1323, 1326.) Evidence admitted at trial established that: (1) it was necessary to climb approximately 15 feet in order to install letters on the scoreboard; (2) the letters were individually installed on the scoreboard and were ordinarily carried up to the scoreboard in the pockets of the person installing them; (3) although the school possessed a portable scaffold with a platform and an upper rail, the scaffold was inconveniently located in a storage shed; and (4) plaintiff had a history of epilepsy of which the school district was aware. Since a jury properly could have found that the administrators of the school knew or should have known of the

possible danger of installing individual letters on a lofty scoreboard while on a ladder, the jury properly could have found that the school board was guilty of a breach of its duty of ordinary care by failing to direct that the scaffold be placed in an accessible location. This is particularly true in view of plaintiff's known history of epilepsy.

After viewing the evidence in light most favorable to plaintiff, I must conclude that the entry of a judgment *n.o.v.* as to count I of plaintiff's complaint was improper. I would therefore reverse the judgment of the trial court and reinstate the verdict.