GARY ZITZMANN, Plaintiff-Appellant and Cross-Appellee, v. KENNETH L. MILLER *et al.*, Defendants-Appellees and Cross-Appellants (Lynn Zitzmann, Plaintiff).

Fifth District   No 5—88—0292

Opinion filed February 21, 1990.

Robert L. Douglas and Fred W. Johnson, both of Law Offices of Robert L. Douglas, Ltd., of Robinson, for appellant.

James C. Kearns and John D. Flodstrom, both of Heyl, Royster, Voelker & Allen, of Urbana, for appellees.

JUSTICE CHAPMAN delivered the opinion of the court:

In this negligence action, plaintiffs Gary and Lynn Zitzmann brought suit against defendants Kenneth L. Miller and Prairie Pizza, Inc., d/b/a Domino's Pizza, for injuries sustained by Gary when a pizza delivery *truck driven* by defendant Miller struck the plaintiff's vehicle. Lynn Zitzmann's claim was based on a loss of consortium. Prior to trial, the court entered summary judgment in favor of the plaintiffs on the issue of liability, and trial was held solely on the issue of damages. The trial court's finding of liability is not at issue in this appeal. After hearing the evidence, the jury returned a verdict in favor of Gary Zitzmann in the amount of $69,000, which was itemized as follows:

| | |
|---|---|
| aggravation of a preexisting condition: | $ 3,000 |
| disability and disfigurement: | $ 3,000 |
| past and future pain and suffering: | $ 6,000 |
| past and future medical expenses: | $15,000 |
| past and future lost wages: | $42,000. |

The jury also returned a verdict in favor of Lynn Zitzmann for loss of consortium in the amount of $13,500. Plaintiff Gary Zitzmann appeals from the denial of his post-trial motion seeking a new trial or an additur; defendants cross-appeal from the denial of their motion for a remittitur. We affirm.

The evidence adduced at trial indicates that on February 20, 1986, a pickup truck driven by plaintiff Gary Zitzmann was struck from behind by defendant's pizza delivery truck while waiting at a red light in Effingham, Illinois. Defendant Miller testified that he was traveling approximately 10 miles per hour at the time of impact. The damage to plaintiff's truck was slight, while the pizza truck sustained approximately $1,100 damage. Approximately a week following the accident, the plaintiff went to Dr. Serra complaining of neck pain. The plaintiff subsequently developed pain in his lower back and was referred to Dr. Menguy, an orthopedic surgeon at Carle Clinic in Urbana, Illinois, on March 21, 1986. Dr. Menguy determined that the plaintiff had a defect of the spine known as spondylolisthesis, a condition which causes instability and slippage of the vertebra. The doctor believed that this condition existed before the automobile accident and was aggravated by it. In June of 1986 the plaintiff underwent a spinal fusion. After the operation plaintiff had to wear a corset-type back brace and could not work. Follow-up examinations indicated that the surgery was successful, but the plaintiff continued to complain of some pain. On December 23, 1986, Dr. Menguy advised plaintiff that he could stop wearing the back brace and he should begin exercising to strengthen his back. The plaintiff last saw Dr. Menguy on January 27, 1987, at which time the plaintiff was told he could return to work, but that he should not lift objects weighing more than 50 pounds. Because the plaintiff missed his next appointment and Dr. Menguy did not see him thereafter, the doctor was unable to say whether the weight restriction was permanent.

The plaintiff was also treated by Dr. Eric A. Baddour, a pain specialist at the Carle Clinic. Dr. Baddour recommended that if the plaintiff continued to have problems with pain after he was released by Dr. Menguy, then he should be placed in an in-patient pain management program. The cost of this program was $6,000 to $8,000.

The plaintiff's employer testified that he would not rehire the plaintiff because of the weight restriction. Prior to the accident, plaintiff was employed as a machinist earning approximately $25,000 to $30,000 per year.

Richard Brown, a vocational rehabilitation specialist, was retained by the defendants to meet with plaintiff and determine what types of

work he was capable of doing. Brown testified that the plaintiff was qualified for employment in such areas as quality control, instrument and machine repair, and machine shop and mechanical maintenance supervision. Brown performed a labor market survey and found several potential jobs for the plaintiff.

Plaintiff Gary Zitzmann testified that he was in good health prior to the accident, but had experienced pain ever since. He stated that his physical activities, such as working around the house and fishing and dancing, were hampered by his pain. Plaintiff stated that there were lots of jobs he could do, but they were not in his field.

The plaintiff's initial contention on appeal is that the jury's verdict was inconsistent with the judicial admissions of defense counsel in closing argument. Specifically, plaintiff refers to the following portion of defendants' closing argument to the jury:

"It would be silly to suggest it would not be painful and uncomfortable here. Mr. and Mrs. Zitzmann said he had to wear a corset for two months constantly. I think for the two of them, I'll try not to go line by line as Mr. Douglas did, but I think $25,000 is a very fair figure for that year of discomfort. So that comes to about $50,000 in wages, a little over $6,000 in medical bills, I think a tad under $6,000 is what it is, and $25,000 for other things."

Plaintiff argues that the jury's award of $42,000 for lost wages is not in accord with defense counsel's "unequivocal and certain" admission that plaintiff was entitled to $50,000 for lost wages. Plaintiff relies primarily on *Lowe v. Kang* (1988), 167 Ill. App. 3d 772, 521 N.E.2d 1245, where the court held that statements made by an attorney in closing argument may be the basis upon which a trial court finds a judicial admission.

*Lowe,* however, is clearly distinguishable from the instant case. In *Lowe,* the plaintiff was struck by defendant's car in a shopping center parking lot and plaintiff sued under a negligence theory. Defendant denied he was negligent and also pleaded the defense of comparative negligence. During defense counsel's closing argument, counsel repeatedly and unambiguously stated that both parties were at fault. Illustrative of the comment made by defense counsel are the following:

"There is no question that there was fault on the part of both parties to this occurrence. *** I'm not trying to say here that Steven Kang did nothing wrong. I said that in the beginning. No one is saying that you're going to return a not guilty verdict in my client's favor. No way. I would be less than reasonable. I would be not very frank with you if I tried to argue that

to you today. There is no question that he is somewhat responsible for this. He is in part responsible. \*\*\* I'm not saying that Steven Kang is totally innocent in this case, but there is also some responsibility on the part of Mrs. Lowe. You have to determine the comparative fault of the plaintiff in the case. I am going to suggest to you that I believe the fault of my client and the fault of Mrs. Lowe are equal. \*\*\* As I've said, I believe this is a 50/50 case. Both parties were equally at fault." *Lowe*, 167 Ill. App. 3d at 778-79, 521 N.E.2d at 1249.

After defense counsel's closing argument, the plaintiff in *Lowe* moved for a directed verdict as to defendant's liability, arguing that defense counsel had admitted the liability of his client. The trial court agreed that defense counsel had admitted that defendant was at fault and directed a verdict on the issue of defendant's liability in favor of plaintiff. On appeal, the defendant argued that the trial court abused its discretion in finding that defense counsel's statements were a judicial admission of liability. The appellate court recognized that whether a statement by an attorney in the course of trial is a judicial admission depends on the circumstances of the case, and that the statement must be given a meaning consistent with the context in which it is found. (*Lowe*, 167 Ill. App. 3d at 777, 521 N.E.2d at 1248.) The court held that, viewed in the context of defendant's entire closing argument, counsel's statements were not advertent or simple misstatements, but were clear admissions of fault.

■ In the instant case, we find that defense counsel's reference to lost wages of "about $50,000" does not constitute a binding judicial admission. Viewed in the context of counsel's entire closing argument, it would appear that this remark was, at best, a mere suggestion to the jury regarding this particular element of damages. Earlier in his argument, defense counsel referred to the testimony of Richard Brown regarding the plaintiff's prospects for employment and stated:

"There are plenty of jobs in the machinist specialty that don't require lifting 50 pounds. But the problem is Mr. Zitzmann doesn't think he can do those things. Again, I don't think we are responsible for that. If Mr. Zitzmann is capable of going back to work and doesn't, I don't think we are responsible for that. And I think the evidence shows there is no good explanation why Mr. Zitzmann hasn't had employment of any kind in the last two years. So ladies and gentlemen, we are not responsible for that."

Under the circumstances of this case, and when viewed in the context of defense counsel's entire closing argument, we find that counsel's

rather casual remark was not a judicial admission of the amount of plaintiff's lost wages.

Plaintiff next contends that the jury's award of damages was inadequate and bears no reasonable relationship to plaintiff's loss. Plaintiff points out that he has not worked since the accident and that his employment prospects are diminished, he had to undergo spinal surgery, he may be permanently disabled, and he has in the past and continues to suffer great pain. Plaintiff also argues that the jury's award of $6,000 to him for pain and suffering is inconsistent with the $13,500 awarded to his wife for loss of consortium. Plaintiff maintains that if his wife's derivative claim is worth $13,500, then his direct claim for injuries "is worth at least as much or more."

■ "The determination of an adequate verdict is peculiarly within the province of the jury and great weight must be given to its determination." (*McMahon v. Richard Gorazd, Inc.* (1985), 135 Ill. App. 3d 211, 230, 481 N.E.2d 787, 800.) A reviewing court will not disturb the jury's findings unless the damages are manifestly inadequate, a proven element of damages has been ignored, or if the amount awarded bears no reasonable relationship to the loss suffered. *Collins v. Straka* (1987), 164 Ill. App. 3d 355, 359, 517 N.E.2d 1147, 1150.

■ After reviewing the entire record, we find that the jury's award is not manifestly inadequate and bears a reasonable relationship to the plaintiff's loss. While the evidence of plaintiff's injuries could have supported a larger verdict, the jury's determination may have been influenced by any number of factors, including: (1) plaintiff's failure to initially complain of lower back pain; (2) Dr. Menguy's testimony that the plaintiff had experienced back trouble before the accident and that it was possible that the plaintiff would have had to undergo a spinal fusion even if the accident had not occurred; and (3) the testimony of Richard Brown, the vocational rehabilitation specialist, that jobs were available to the plaintiff. While some of these matters were disputed at trial, it was the jury's function to determine the credibility of the witnesses and weigh the evidence. (*Collins*, 164 Ill. App. 3d at 360, 517 N.E.2d at 1151; *Beckmeyer v. Alcala* (1985), 135 Ill. App. 3d 166, 174, 481 N.E.2d 893, 898.) We will not substitute our judgment for that of the trier of fact. The mere fact that the plaintiff was disappointed by a verdict that was lower than expected does not require reversal. (*Lee v. Chastang* (1979), 79 Ill. App. 3d 622, 625, 398 N.E.2d 1250, 1252.) Nor do we believe that the "inconsistency" perceived by plaintiff between the amount of damages awarded to his wife for loss of consortium and his damages for pain and suffering requires a different result. Plaintiff offers no authority for the proposi-

tion that damages for pain and suffering must exceed those awarded to a spouse for loss of consortium, and we find nothing inherent in such a result to warrant disturbing the jury's verdict.

We now address the defendants' contention on cross-appeal that the trial court erred in admitting the deposition testimony of Dr. Baddour regarding the possibility of future medical treatment at the Carle Pain Clinic. The substance of Dr. Baddour's testimony was that after examining the plaintiff and consulting with other members of the staff at the pain clinic, he recommended that the plaintiff enter an inpatient pain management program if the plaintiff was still experiencing pain after being released from Dr. Menguy's care. When asked whether he had an opinion based on a reasonable degree of medical certainty whether the pain program was necessary, the doctor answered:

"At the time we felt that it would be a possible necessity. We wanted to wait until Doctor Menguy was finished with his treatment. We were concerned at the time that that was a strong possibility."

The defendants argue that Dr. Baddour's opinion regarding the necessity of further treatment was mere speculation. They point out that the plaintiff's last visit to Dr. Baddour was on January 6, 1987, at which time he was still under Dr. Menguy's care; therefore, Dr. Baddour could not know whether treatment at the pain clinic was necessary since the plaintiff was still being treated. Defendants note that "damages may not be awarded on the basis on conjecture or speculation" (*Schoeneweis v. Herrin* (1982), 110 Ill. App. 3d 800, 808, 443 N.E.2d 36, 42) and "possible future damages are not compensable unless they are reasonably certain to occur" (*Harp v. Illinois Central Gulf R.R. Co.* (1977), 55 Ill. App. 3d 822, 827, 370 N.E.2d 826, 829), and they maintain that in the absence of testimony by Dr. Baddour that he believed at the time of his testimony that it was necessary for the plaintiff to attend the pain clinic, it was improper to allow testimony about the cost of the clinic and to allow the jury to consider it as an element of damages. We do not agree.

In *Jeffers v. Weinger* (1985), 132 Ill. App. 3d 877, 477 N.E.2d 1270, a doctor testified that it "was within the realm of possibility" that plaintiff would lose her foot as a result of the defendant's negligence (*Jeffers*, 132 Ill. App. 3d at 884, 477 N.E.2d at 1275). On cross-examination, the doctor stated that the possibility of losing the foot was less than 1%. In rejecting the defendants' argument that the testimony was speculative and should not have been admitted, the court stated: "We find that whether there is a 1% possibility or a 99% pos-

sibility, each is an element of damage which should be considered by the jury." *Jeffers*, 132 Ill. App. 3d at 884, 477 N.E.2d at 1276.

In *Cummings v. Chicago Transit Authority* (1980), 86 Ill. App. 3d 914, 408 N.E.2d 737, a defendant argued that plaintiff's future medical expenses for a laminectomy were not recoverable because they were not reasonably certain to occur. Plaintiff's witness had testified that such an operation was necessary ,to relieve the plaintiff's back pain; however, it had been postponed in 1975 and 1978 because of the risks posed by plaintiff's other health problems. When asked the status of the decision concerning future surgery, the witness stated that such a decision would require a balancing of the risks to the patient against the potential benefits. The appellate court found that the jury could have concluded from this testimony that the surgery was reasonably certain to occur in the future. *Cummings*, 86 Ill. App. 3d at 921, 408 N.E.2d at 742.

■ We believe Dr. Baddour's testimony that after examining the plaintiff he agreed that there was a "strong possibility" that treatment at the pain clinic would be necessary was admissible as evidence of future damages. While it might have been preferable for the doctor to base his opinion on a recent consultation with the plaintiff, we find no error by the trial court in allowing the jury to weigh the testimony. Moreover, when Dr. Baddour's testimony is considered in conjunction with that of the plaintiff that he intended to seek treatment at the pain clinic, it is apparent that there was sufficient evidence to support the jury's award.

For the above-stated reasons, the judgment of the circuit court is affirmed.

Affirmed.

WELCH and HOWERTON, JJ., concur.