COLETTE MARTIN, Plaintiff-Appellant, v. DAVID CAIN, Defendant-Appellee.

Fifth District   No. 5—89—0674

Opinion filed August 26, 1991.—Rehearing denied October 7, 1991.

Randy Patchett, of Winters, Brewster, Murphy, Crosby & Patchett, of Marion, for appellant.

Donald V. Ferrell, of Jelliffe, Ferrell & Morris, of Harrisburg, for appellee.

JUSTICE GOLDENHERSH delivered the opinion of the court:

Plaintiff, Colette Martin, was injured when a car door was inadvertently slammed on her knee by defendant, David Cain. Plaintiff filed a complaint seeking damages for defendant's negligence. After a jury trial in the circuit court of Williamson County, a verdict was entered in favor of plaintiff and against defendant in the amount of $10,000, which constituted plaintiff's medical expenses and compensation for pain and suffering. Plaintiff appeals from the denial of her post-trial motion seeking a new trial on the issue of damages, or in the alternative, a new trial on the issue of defendant's negligence and plaintiff's damages. Plaintiff argues that the trial court erred in denying her post-trial motion and contends that she is entitled to a new trial on the issue of damages. We agree.

The facts of this case are not in dispute. The parties involved in this case were friends. On April 6, 1986, defendant shut the driver's door of his 1985 Camaro on plaintiff's left knee as plaintiff was attempting to enter the back seat of defendant's car. Her left knee was pinned between the driver's side door and the car's frame. Defendant told plaintiff that he slammed the door extremely hard because he had been having trouble getting the door to shut tightly. Defendant took plaintiff to the emergency room, where plaintiff was given X rays, ice

packs, a prescription for medicine, and a pair of crutches. Two days later, plaintiff went to see her family physician because she was still experiencing pain and was unable to put any weight on her knee. Plaintiff remained on crutches for approximately two weeks following the incident. Plaintiff stated that the swelling and discoloration remained for approximately two to three months, and it was at least that long before she was able to move her knee within a normal range of motion.

On April 25, 1986, plaintiff saw Dr. Stanley London, a board-certified general surgeon with a subspecialty interest in knees and sports medicine. On plaintiff's first visit, Dr. London noted that plaintiff had some black and blue areas on the inside part of her left knee. He found plaintiff's knee to be stable with tenderness under her kneecap and along her medial collateral ligament. Dr. London also detected some crepitation, more commonly referred to as popping, under her left kneecap as well as her right kneecap. Plaintiff had difficulty bending her left knee. Dr. London found the injury to her knee to be consistent with plaintiff's explanation of getting her knee slammed in a car door three to four weeks earlier. By July 23, 1986, Dr. London found her left knee to have a full range of motion. Because of the persistence of plaintiff's symptoms, Dr. London performed an arthrogram on September 2, 1986. This procedure involves injecting dye and air into the knee joint in order to visualize more than can be seen with an ordinary X ray. Dr. London found the results to be normal.

On January 27, 1987, plaintiff underwent an arthroscopy because of the persistence of her symptoms. Plaintiff was given a general anesthetic while a telescopic instrument was inserted into her knee in order to see inside. Dr. London detected a condition referred to as a plica band. This is a congenital condition that occurs in approximately 20% of the population and, according to Dr. London, is overwhelmingly nonsymptomatic. Occasionally, usually due to a trauma, the plica may become irritated and thickened. In plaintiff's case, the band ran along the inside part of her kneecap and was somewhat thickened and of moderate size. Dr. London testified that to a reasonable degree of medical certainty, the thickening of plaintiff's plica band was caused by plaintiff's knee being slammed in defendant's car door. Dr. London also stated that he had no reason to doubt the sincerity of plaintiff's complaints of pain. He found that there were limitations on plaintiff's activities immediately after the accident, and because the symptoms continued, Dr. London assumed that these symptoms continued to interfere with plaintiff's activities. While plaintiff still had subjective complaints of pain as well as complaints of swelling and popping, Dr.

London objectively found plaintiff's left knee to be as good as her right knee. Dr. London believes that it is possible that plaintiff will continue to experience some symptoms.

The arthroscopy left a scar on plaintiff's left knee which she displayed to the jury. Plaintiff also had a larger scar on her left knee which was the result of a bicycle accident. Plaintiff testified that after the arthroscopy, she was in a bandage from her pelvis down to her foot with an overlapping wood slatted brace that completely immobilized her knee. The brace remained on for three weeks, and plaintiff had to use crutches for three months. Plaintiff participated in therapy and gradually regained her range of motion.

On April 6, 1986, plaintiff was unemployed. Plaintiff and her husband owned a lounge that closed in June of 1986. The closing of this business was not attributable to plaintiff's injury, but rather, to losses that the business suffered. At the time of the arthroscopy, which was performed on January 29, 1987, plaintiff was employed by a chiropractor at a wage of $5.50 per hour. The chiropractor terminated plaintiff's employment because the scheduled arthroscopy prevented plaintiff from attending a seminar in Miami, Florida. In March 1987, plaintiff attempted to return to work as a physician's assistant for Dr. Parks. She worked for Dr. Parks for approximately two weeks at a wage of $4.25 per hour, but was forced to quit because being on her feet caused her left knee to swell. Plaintiff went to work for Cherry Insurance Company in June 1987, at a wage of $5 per hour. Altogether, plaintiff stated she missed 18 weeks of work due to her knee injury.

Plaintiff also testified that her activities have been severely limited since her knee injury occurred. Prior to the injury, plaintiff mowed her yard, painted her house, did all her house and yard work, did the family's laundry, jogged, and participated in weightlifting. Plaintiff also stated that she could work as a beauty operator at her mother's shop. After the injury to her knee, plaintiff was no longer able to jog, mow the lawn, complete her housework without assistance, or work as a beauty operator. Such activities caused plaintiff pain and her knee to swell.

During closing argument plaintiff's attorney asked for $1,000 for the disfigurement caused by the scar on plaintiff's knee because of the arthroscopy, $3,931 for medical expenses, $3,500 for lost wages, $20,000 for pain and suffering, and $25,000 for disability. The defense attorney argued that defendant was not in any way liable, but if the jury did find defendant liable, he argued that $15,000 would be a

more reasonable amount to award plaintiff. The jury returned a verdict of $10,000. The itemized verdict read as follows:

> "a. Disability and disfigurement
>    resulting from the injury     $      --0--
>
> b. Pain and suffering experienced
>    and reasonably certain to be
>    experienced as a result of the
>    injury      6,069.00
>
> c. Reasonable expenses of
>    necessary medical care,
>    treatment and services
>    received      3,931.00
>
> d. Value of earnings lost      --0--"

The first issue we are asked to consider is whether the trial court erred in denying plaintiff's motion for new trial on the issue of damages. Plaintiff contends that there is clear liability on the part of defendant, but that the jury ignored proven elements of damages by not awarding any compensation for disability, disfigurement, or lost wages. Defendant responds that the trial court did not abuse its discretion in denying plaintiff's motion for a new trial because the jury did not ignore proven elements of damages as plaintiff claims, but rather, the jury made a credibility determination based upon the evidence, and the jury's determination cannot be set aside merely because different conclusions could have been drawn or because a reviewing court may feel that other results are more reasonable.

The decision as to whether a new trial should be granted rests within the sound discretion of the trial court, and its ruling will not be reversed absent an abuse of that discretion. (*Hinnen v. Burnett* (1986), 144 Ill. App. 3d 1038, 1039, 495 N.E.2d 141, 142; *Ford v. Baker* (1978), 61 Ill. App. 3d 45, 46, 377 N.E.2d 853, 854.) As a general rule, a new trial in a personal injury action will not be granted on the ground that the damages awarded by the jury are too small. (See *Nicholl v. Scaletta* (1982), 104 Ill. App. 3d 642, 647, 432 N.E.2d 1267, 1272.) This is particularly true where no complaint is made as to the jury instructions or admissibility of evidence, and the trial was otherwise error-free. (See *Ford*, 61 Ill. App. 3d at 46, 377 N.E.2d at 854; *Haleem v. Onate* (1966), 71 Ill. App. 2d 457, 460, 219 N.E.2d 94, 96.) A jury's finding on damages should not be disturbed unless the damages are manifestly inadequate, a proven element of damages is ignored, or the amount awarded bears no reasonable relationship to the

loss suffered. *Zitzmann v. Miller* (1990), 194 Ill. App. 3d 477, 482, 551 N.E.2d 707, 710.

◼ After reviewing the entire record, we find that proven elements of damages were ignored. The jury awarded no money for disability and disfigurement nor any money for lost wages. The jury did, however, award all of plaintiff's medical expenses plus $6,069 for pain and suffering. We find it inconsistent that the jury would allow recovery for pain and suffering, but fail to award any money for disability. Clearly, the jury believed that plaintiff was injured as a result of the car door being slammed on her knee and that this injury caused her pain. The evidence was uncontradicted that plaintiff's lifestyle had been changed as a result of her knee injury. Plaintiff, who was 35 years old at the time of her knee injury, had been quite active up until the day her knee was slammed into defendant's car door. Before this injury, plaintiff jogged, lifted weights, mowed the family lawn, did all the family's household chores without the need for assistance, and could work as a beauty operator at her mother's shop. After the injury, plaintiff's activities had to be curtailed. Plaintiff is no longer able to participate in sports or even complete her housework without her knee becoming swollen and irritated. Moreover, even though plaintiff did not find the scar on her left knee caused by the arthroscopy to be bothersome, she nonetheless has a scar from this procedure which the jury did not even nominally compensate. Had the jury awarded a small amount for disability and disfigurement, then the situation might be different. We could then arguably acknowledge that the jury recognized such damages but chose not to believe all of plaintiff's testimony. Where we are faced with zero dollar awards when damages are clearly evident, however, we have no choice but to declare that the verdict is inconsistent. *Kumorek v. Moyers* (1990), 203 Ill. App. 3d 908, 561 N.E.2d 212.

◼ On the other hand, plaintiff's claim for lost wages is somewhat less clear, as plaintiff was unemployed at the time of the accident. However, it was uncontroverted that plaintiff did lose her job working for a chiropractor because she was unable to attend a seminar in Miami because of her scheduled arthroscopy. Plaintiff was out of work for nine weeks until she found another job working for a physician for $1.25 per hour less than her job with the chiropractor. It was also uncontroverted that plaintiff had to quit the job with the physician due to discomfort she experienced in her knee. She was again unemployed for nine weeks until she found a job with an insurance company. Plaintiff offered a reasonable basis for calculating her lost wages. She did not ask for the $5.50 per hour she was making at

the chiropractor's office, but instead used the lower figure of $4.25 per hour which she earned at the physician's office. Defendant offered the jury no competent evidence to rebut plaintiff's calculation; therefore, the jury was not at liberty to disregard its instruction to consider all elements of damages. (*Blevins v. Inland Steel Co.* (1989), 180 Ill. App. 3d 286, 291, 535 N.E.2d 972, 975.) As a matter of law, we find that plaintiff's damages are inadequate.

■ The next issue we must address is whether defendant is entitled to a new trial on the question of damages only. A new trial limited to the issue of damages may be granted where:

> "(1) the jury's verdict on the question of liability is amply supported by the evidence; (2) the questions of damages and liability are so separate and distinct that a trial limited to the question of damages is not unfair to the defendant; and (3) the record suggests neither that the jury reached a compromise verdict, nor that, in some other identifiable manner, the error which resulted in the jury's awarding inadequate damages also affected its verdict on the question of liability." *Robbins v. Professional Construction Co.* (1978), 72 Ill. 2d 215, 224, 380 N.E.2d 786, 790.

First, we believe that the evidence amply supported the jury's verdict on the issue of liability. There was no evidence that plaintiff did anything to cause the door to be slammed on her knee. While defendant did not intentionally cause plaintiff's knee to be injured, it is clear from the evidence presented that he was negligent in failing to determine whether plaintiff was in the car before he slammed the door. Second, we find the issues of damages and liability to be separate and distinct. On remand, the jury could certainly determine adequate damages in this case without hearing the evidence on liability. Finally, as previously discussed, we believe that the jury improperly disregarded proven elements of damages. There is nothing in the record to indicate that the verdict was a compromise among the jurors or that the jurors bargained inadequate damages for unjustified liability. Therefore, we find that plaintiff is entitled to a new trial solely on the issue of damages.

For the foregoing reasons, the judgment of the circuit court of Williamson County is reversed and the cause remanded for a new trial on the issue of damages.

Reversed and remanded with directions.

RARICK, P.J., and WELCH, J., concur.